# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00213-CR

**Bradley Calvert Jarrell, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
## NO. D1-DC-05-904158, HONORABLE BOB PERKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Bradley Calvert Jarrell guilty of three counts of aggravated assault on a public servant and found that he used a deadly weapon, a motor vehicle, in the commission of the offense. *See* Tex. Penal Code Ann. § 22.02(b)(2) (West Supp. 2006). The trial court assessed punishment at twenty years in prison for each count, with the sentences to run concurrently. On appeal, Jarrell contends that the trial court erred in admitting certain exhibits that were not properly authenticated and in admitting exhibits whose probative value was substantially outweighed by the danger of misleading the jury. *See* Tex. R. Evid. 901, 403. He also contends that the trial court erred by admitting certain hearsay testimony, by including an instruction in the jury charge assigning criminal responsibility based on the results of his conduct, and by allowing the prosecutor to check out certain trial exhibits from the district clerk's office. We affirm.

At approximately 9:30 a.m. on November 18, 2004, Jarrell's ex-wife, Tammy Green, called 911 to report that Jarrell was harassing her at her office. Green asked the 911 operator to send

a police officer to her office and gave a description of Jarrell to the operator. Shortly thereafter, Green left her office and went to the H-E-B supermarket at McNeil Drive and Parmer Lane. Once there, she called 911 again to report that Jarrell had followed her to H-E-B.

Austin Police Department Officer Troy Reeves responded to Green's calls. He testified that, on his way to meet Green, he called Green's cell phone to gather "safety information" on Jarrell. According to Officer Reeves, Green said that Jarrell was armed with a 9 mm handgun. Officer Reeves testified that "[Green] said that [Jarrell] said that he would hurt officers if we got involved." Green also gave Officer Reeves a description of Jarrell's car—a maroon Saturn. Officer Reeves testified, "As I was going west up to McNeil, I see the maroon Saturn traveling eastbound away from H-E-B, and I turned around and got behind it." Austin Police Department Officer Ron Anderson, who was in a separate patrol car, pulled in behind Officer Reeves's patrol car, and both officers activated their overhead lights to initiate a traffic stop of Jarrell's vehicle. Instead of stopping, Jarrell traveled down Parmer Lane and entered the Mopac freeway traveling southbound. The officers followed Jarrell. During the pursuit, Jarrell used his cell phone to call his mother, a local news station, and 911.

Austin Police Department Officer Steven Claiborne heard through dispatch that police were pursuing Jarrell on Mopac. At the time, Officer Claiborne was patrolling the area near Lake Austin Boulevard and Mopac on a motorcycle. Officer Claiborne testified that he parked his motorcycle at the end of a concrete barrier near the entrance ramp of Mopac. While Officer Claiborne was waiting there, Officer Martinka arrived to deploy "stingers" across Mopac to puncture Jarrell's tires. The plan was for Officer Claiborne to slow down traffic and for Officer Markinka to move across the first two lanes and deploy the stingers on the inside lane of the expressway. As

2

Jarrell's vehicle approached, however, the officers were forced to abandon the attempt to deploy the stingers. According to Officer Claiborne, "he [Jarrell] made a sudden move out of an unobstructed lane towards us, and we had to run out of Mopac or be struck." Officer Martinka testified, "I then see the suspect vehicle start swerving out to the outside lane, and then I immediately started yelling at Officer Claiborne that [Jarrell's] coming at us, to get out of the road." The officers ran off the road and got behind the concrete barrier, leaving the stingers on the shoulder of the expressway. Officer Claiborne testified that Jarrell's vehicle came within "two and a half, three feet" of hitting him.

Officer Claiborne also testified he believed that Jarrell changed lanes "to get me and Martinka off the road and keep us from deploying the stingers so that he could keep running from the police." Officer Martinka testified he did not believe that Jarrell swerved to the shoulder of the expressway by accident because he had been traveling down the inside, open lane of Mopac and "there was nothing to detour anybody out of that lane." While swerving toward the officers, Jarrell's vehicle ran over the stingers on the shoulder of the expressway, deflating his two right tires, and the pursuit continued at a lower rate of speed. According to Officer Claiborne, the sergeant in charge of the pursuit made the decision to "try to wreck [Jarrell] to stop the pursuit." However, when one of the patrol cars tried to push Jarrell's vehicle into a concrete retaining wall, the vehicle spun counterclockwise and came to a stop at the top of an exit ramp. Jarrell accelerated down the exit ramp toward Austin Police Department Officer Ryan Stearns, who was stopped on the exit ramp on his motorcycle. Officer Stearns testified that he abandoned his motorcycle and ran toward the guardrails of the exit ramp as Jarrell's vehicle came toward him. He stated that Jarrell's vehicle came within "two to three feet" of hitting his foot.

3

Austin Police Department Officer Gregory White, who had stopped his patrol car near the end of the exit ramp, fired three shots at Jarrell to incapacitate him and stop him from hitting Officer Stearns. At this point, Jarrell stopped his vehicle, put his arms out the window, and surrendered to the police. Austin Police Department Officer Chris Moore, who approached Jarrell's vehicle with Officer Martinka, testified that Jarrell "made a statement that he had a gun between his legs." Officer Moore grabbed the gun from Jarrell's lap and Officer Martinka placed Jarrell arrest.

On September 28, 2005, Jarrell was indicted for three counts of aggravated assault on a public servant—namely, Officers Claiborne, Martinka, and Stearns. *See* Tex. Penal Code Ann. § 22.02(b)(2). The indictment alleged that Jarrell used his motor vehicle as a deadly weapon during the commission of the offense.[1] Jarrell was tried before a jury on his plea of not guilty. His first trial resulted in a hung jury. At the second trial, the State presented seventeen witnesses, many of whom were law enforcement officers, and numerous exhibits, including transcripts of Green's calls to 911 and Jarrell's call to 911, an audiotape of Jarrell's call to 911, photographs of the crime scene, and videotapes of the pursuit taken from cameras inside several patrol cars. The jury found Jarrell guilty of three counts of aggravated assault on a public servant with a deadly weapon. The trial court assessed punishment at twenty years in prison for each count, with the sentences to run concurrently.

Jarrell's first two issues concern the admissibility of two "compilation exhibits" in which the audio recording of Jarrell's conversation with the 911 operator is paired and played with videotapes of the pursuit taken from Officer Anderson's and Officer Reeves's patrol cars. Jarrell complains that the compilation is unreliable and misleading because the State offered insufficient

---

[1] Jarrell was also indicted for one count of felony stalking. *See* Tex. Penal Code Ann. § 42.072 (West 2003). He entered a plea of guilty on this count, and the trial court assessed punishment at eight years in prison. Jarrell does not appeal this conviction.

proof that the audio track had been accurately synchronized with the video track.  Jarrell complains specifically that his statement "I'm going to run you over" was directed at cars traveling near him during the chase, but that the inaccurate synchronization in the compilation caused the comment to be heard contemporaneously with the video portion showing his car nearly hitting Officers Claiborne and Martinka.  Jarrell's attorney made the following objection at trial when the State attempted to introduce the exhibits:

[Defense Counsel]:    Judge, there has been ample testimony that none of the clocks on the cars were synced up, and they in turn were not synced up with the dispatch.  So, I think it is very unreliable and I think it would be extremely misleading for the jury to have them synced up because they're essentially winging it when these events occurred simultaneously.  They don't know exactly, in syncing them up, how that can be synced up; and, in fact, if it's only as much as half a second off, that's going to make a big difference.  But there's a portion of the tape that they want to introduce that [Jarrell] says, "I am going to run you over."  Well, it's half a second either way, that's going to make a huge difference.  And what they are doing is guessing when those two things happened, and they are trying to sync them up.

The State responded to the objection as follows:

[Prosecutor]:    Your Honor, they are synced up with the context of the action and the conversation that is occurring.  As the defendant passes the stingers, he says, "good try though."  It's obvious that he is not aware that he has been successfully stung by the stingers.  And so we synced it up with the context from that point backward to start the tape so that it would be consistent with the action as it is occurring . . . .  And we would offer these [exhibits] as an aid to the jury, as a compilation and summary of evidence that otherwise would be difficult to put together.

5

The trial court stated that the jury was entitled to know that the synchronization in the compilation was not exact, but that the timing issue "goes more to the weight as opposed to the admissibility." The trial court then overruled Jarrell's objection to the exhibits.

In his first issue, Jarrell argues that the trial court erred in admitting the compilation exhibits because they were not properly authenticated under Texas Rule of Evidence 901. Rule 901 provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Tex. R. Evid. 901. Subsection (b) of rule 901 provides forms of acceptable authentication that will comply with the rule. For example, testimony by a witness with knowledge that the matter is what it is claimed to be is an acceptable method of authentication. *Id.* 901(b)(1). Rule 901 does not require the State to prove anything—it requires only a showing that satisfies the trial court that the matter in question is what the State claims. *Garner v. State*, 939 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd). Once that showing is made, the exhibits are admissible. *Id.*

In this case, the State examined Detective Rogelio Sanchez of the Austin Police Department, who worked as the lead investigator assigned to Jarrell's case, prior to the introduction of the compilation exhibits. Sanchez testified that he had reviewed all the audiotapes and videotapes in the case and that the media lab of the police department created the compilation exhibits as follows:

[Prosecutor]:  And how did—is this a compilation of the in-car video and the conversation between the defendant and the 9-1-1 operator?

6

| [Sanchez]: | Yes. |
| --- | --- |
| [Prosecutor]: | And how did you sync these up so that it would be as accurate as possible? |
| [Sanchez]: | As best we could, we tied in his conversation and his description of what was going on at the time of the pursuit with the video footage from the officers' in car cameras. |
| [Prosecutor]: | So you did it by context of what was being said and what you saw in the in-car video? |
| [Sanchez]: | That's correct. |

During cross-examination, Sanchez testified that he knew of no scientific method to ensure that the video tracks were "perfectly accurate and synced up" with the audio track and that it was possible that the timing of the synchronization was off by half a second or more.

In this case, the State did not claim that the compilation exhibits provided an exact match of the timing of Jarrell's call to 911 with the videos from the patrol cars. Instead, the State claimed that the audio track and the video tracks were synced up according to context. Thus, we are satisfied that Sanchez's testimony explaining how the compilation exhibits were made and that they were what they purported to be satisfied the requirements of rule 901.

In his second issue, Jarrell contends that the trial court erred by admitting the compilation exhibits because their probative value was substantially outweighed by the danger of misleading the jury under Texas Rule of Evidence 403. Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of . . . misleading the jury." Tex. R. Evid. 403. In reviewing the trial court's determination under rule 403,

7

a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

The record reflects that the State played the compilation exhibits for the jury to help them understand the timing of the events and to demonstrate that Jarrell intentionally or knowingly aimed his vehicle at the police officers. However, the jury was advised through Detective Sanchez's testimony on cross-examination that the synchronization of the audio track with the video tracks was not "perfectly accurate." On this record, we cannot conclude that the trial court erred in finding that the probative value of the compilation exhibits was not substantially outweighed by the danger of misleading the jury under rule 403.

However, even if the trial court erred by admitting the compilation exhibits, we are of the view that the error was harmless. Before the compilation exhibits were played for the jury, an audiotape of Jarrell's call to 911 and videotapes from both Officer Anderson's and Officer Reeves's patrol cars were admitted separately into evidence and played for the jury without objection. The jury also heard testimony from Officers Claiborne and Martinka that they believed that Jarrell intentionally swerved his car toward them on the shoulder of Mopac. Officer Stearns testified that Jarrell intentionally accelerated his vehicle toward him on the exit ramp, and Officer White testified that "it appeared that the car was making an attempt to strike the officer [Stearns]." In light of the cumulative evidence in the record demonstrating that Jarrell intentionally or knowingly aimed his vehicle at the police officers, the admission of the compilation exhibits did not have a substantial and injurious effect or influence in determining the jury's verdict. *See* Tex. R. App. P. 44.2(b); *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005) ("The Rule 44.2(b) harm

8

standard is whether the error in admitting the evidence had a substantial and injurious effect or influence in determining the jury's verdict.").

In his third issue, Jarrell contends that the trial court erred by admitting into evidence Green's out-of-court statements to Officer Reeves on the basis that those statements were inadmissible hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" Tex. R. Evid. 801(d). Texas Rule of Evidence 802 provides: "[h]earsay is not admissible except as provided by statute or these rules . . . ." Tex. R. Evid. 802. The rules of evidence provide an exception to the hearsay rule for an excited utterance, described as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex. R. Evid. 803(2). To qualify as an excited utterance, (1) the statement must be the product of a startling occurrence, (2) the declarant must have been dominated by the emotion, excitement, fear, or pain of the occurrence, and (3) the statement must be related to the circumstances of the startling occurrence. *Couchman v. State*, 3 S.W.3d 155, 159 (Tex. App.—Fort Worth 1999, pet. ref'd) (citing *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994)). The critical factor in determining whether a statement is an excited utterance is whether the emotions, excitement, fear, or pain of the event still dominated the declarant at the time of the statement. *Oveal v. State*, 164 S.W.3d 735, 740 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd), *cert. denied*, 547 U.S. 1116 (2006).

In this case, Officer Reeves testified that he called Green on her cell phone to gather "safety information" on Jarrell after Green had called 911. He testified that Green told him that

9

Jarrell was armed with a 9 mm handgun, had a felony warrant out for his arrest, and would hurt officers if they got involved. Officer Reeves also gave the following testimony concerning the circumstances under which Green gave the statements:

> [Prosecutor]: And what did [Green] sound like when you were talking to her? Did she sound excited?
>
> [Reeves]: Excited and somewhat frustrated. She sounded kind of upset that this was happening at her place of business.
>
> . . . .
>
> [Prosecutor]: And so she told you she was upset and she was frustrated and she just wanted to get it over with?
>
> [Reeves]: That's correct.

At the time Officer Reeves contacted Green, Jarrell had not been apprehended. In light of the ongoing nature of the search for Jarrell, combined with Officer Reeves's testimony regarding Green's state of mind at the time she gave the statements, the trial court could have reasonably concluded that Green was dominated by the emotions, excitement, fear, or pain of the event at the time she gave the statements to Officer Reeves. The trial court did not err by admitting Green's out-of-court statements to Officer Reeves as excited utterances.

In his fourth issue, Jarrell contends that the trial court erred in including an instruction in the jury charge assigning criminal responsibility based on the results, rather than the nature, of Jarrell's conduct. Specifically, paragraph IV of the jury charge stated, "A person is criminally responsible if the result would not have occurred but for his conduct." Review of alleged jury charge error requires that an appellate court make a two-fold inquiry: (1) whether error exists in the jury charge, and (2) whether sufficient harm was caused by the error to require reversal. *Abdnor v. State*,

10

871 S.W.2d 726, 731 (Tex. Crim. App. 1994). When, as here, no proper objection was made at trial to the jury charge, an appellant will obtain a reversal only if he shows that the jury charge caused him such "egregious harm" that he did not have "a fair and impartial trial." *Martin v. State*, 200 S.W.3d 635, 639-40 (Tex. Crim. App. 2006) (quoting *Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985)).

We do not need to address the merits of whether the trial court erred in including the instruction assigning criminal responsibility based on the results of Jarrell's conduct. Even if error exists in the jury charge, Jarrell did not suffer egregious harm such that he was denied a fair and impartial trial. Although paragraph IV of the jury charge stated that "[a] person is criminally responsible if the result would not have occurred but for his conduct," the application paragraphs of the charge instructed the jury to find Jarrell guilty of aggravated assault of a public servant if they found that he intentionally or knowingly threatened the officers with imminent bodily injury and used his vehicle during the commission of the offense. As discussed above, the record contains sufficient evidence that Jarrell intentionally or knowingly threatened the officers with his vehicle. Moreover, the State did not argue to the jury that they should convict Jarrell based on the results of his conduct. In light of the evidence in the record, the arguments at trial, and the application paragraphs of the jury charge requiring the jury to find the elements of aggravated assault of a public servant with a deadly weapon to convict Jarrell of that offense, the inclusion of paragraph IV in the jury charge did not deny Jarrell a fair trial.

In his fifth issue, Jarrell contends that the trial court erred by allowing the prosecutor to check out certain trial exhibits from the trial clerk's office. Jarrell previously filed a motion for abatement in this Court alleging that "the integrity of the appellate record has been compromised by

11

the State's taking possession of eight original trial exhibits (7 digital video discs and 1 videotape) from the trial court clerk in violation of the Texas Rules of Appellate Procedure and of other rules and laws." According to Jarrell, the trial court released the exhibits to the State so that the State could make copies of the exhibits to comply with an open records request. In his motion, Jarrell requested an abatement so that he could "submit evidence which could support the granting of a new trial" under Texas Rule of Appellate Procedure 34.6(f). The motion for abatement was overruled.

Texas Rule of Appellate Procedure 34.6(f) entitles an appellant to a new trial if part of the reporter's record was lost or destroyed, is necessary to the appeal, and cannot be replaced. However, Jarrell does not allege that any part of the record was lost or destroyed. There is no evidence that any of the original trial exhibits are missing or altered from the appellate record. There is also no evidence that Jarrell was harmed by the State's temporary custody of the exhibits for the purpose of making copies of the exhibits.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: August 10, 2007

Do Not Publish