James Ray GARNER, Appellant,

v.

The STATE of Texas, State.

No. 2–95–361–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 27, 1997.

Cindy Stormer, Gainesville, for appellant.

Janelle M. Haverkamp, District Attorney, Gainesville, for appellee.

Before CAYCE, C.J., and DAY, and DAUPHINOT, JJ.

## OPINION

DAUPHINOT, Justice.

Appellant, James Ray Garner, was convicted by a jury of delivery of methamphetamine. The jury sentenced Appellant to thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant appeals from his conviction and sentence, bringing fourteen points of error. We affirm.

## SENTENCING

◼ Appellant contends that the trial court erred in denying his motion to be sentenced under the new Penal Code,[1] which makes delivery of a small amount of methamphetamine a state jail felony. At the time Appellant committed the offense, it was a first degree felony. Appellant argues that

---

1. Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 2.08–.09, 1993 Tex. Gen. Laws 3586, 3714, effective September 1, 1994.

the Code Construction Act[2] entitles him to the lesser punishment. We disagree. As we held in *Phuong Thai Than v. State*,[3]

> [S]ection 311.031(b) of the Government Code does not govern this case. In section 1.18 of article I of Senate Bill 1067, the Legislature made plain that an offense committed before September 1, 1994 would be governed by the Penal Code provisions in effect at the time of the offense.....
>
> If there is a conflict between a statute that has specific provisions and a statute that has general provisions applicable to the same subject, the specific will prevail, especially when it was enacted later than the general.[4]

Other appellate courts have reached the same conclusion.[5]

The trial court properly overruled Appellant's motion. Appellant's first point of error is overruled.

### DISCOVERY

■ In his thirteenth point of error, Appellant complains for the first time that the State failed to provide discovery in a timely manner. Appellant made no objection at trial, requested no continuance of the trial, and has not shown us how he was harmed by the delay, if he was. Appellant presents nothing for review. The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise.[6] Appellant's thirteenth point of error is overruled.

### CHAIN OF CUSTODY

In his second point of error, Appellant complains that the trial court erred in failing to sustain his objection to State's Exhibits 5a and 5b because of a failure to establish an initial chain of custody and because there was a subsequent break in the chain of custody. Although it is multifarious, we address this point of error in the interest of justice.[7] Appellant points out that Monica Banks, the police informant, admitted that she used drugs during her work for the drug task force. Officer Robinette testified that because he had failed to search Banks before she met with Appellant, it was possible that she had taken the drugs to her meeting with Appellant. Banks met with Appellant in a motel room, and she had a micro-cassette tape recorder tucked in the front of her jeans. When Banks returned to Robinette after her meeting with Appellant, she was holding a plastic baggie containing a brownish powder. She gave the officer the baggie and returned the tape recorder to him. The cassette contained a recorded tape which was admitted into evidence as State's Exhibit No. 4. Robinette field-tested the powder, initialed the baggie, and placed the baggie in the evidence locker. The next day he submitted the baggie to the lab, placing it in a larger envelope, which he mailed. The envelope and baggie were returned for trial and admitted into evidence as State's Exhibits 5a and 5b.

■ Before adoption of the rules of criminal evidence, the law was well established that proof of the chain of custody went to the weight rather than to the admissibility of the evidence.[8] As the State points out, the rules of criminal evidence do not specifically address the chain of custody issue, nor has the Criminal Court of Appeals expressly decided it. Rule 901(a) provides: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that

2. TEX. GOV'T CODE ANN. § 311.031(b) (Vernon 1988).

3. 918 S.W.2d 106 (Tex.App.—Fort Worth 1996, no pet.).

4. *Id.* at 108. *See also State v. Mancuso*, 919 S.W.2d 86, 88 (Tex.Crim.App.1996) (specific statute prevails over general statute unless general statute was enacted later and was clearly meant to prevail).

5. *Wilson v. State*, 899 S.W.2d 36, 38 (Tex.App.—Amarillo 1995, pet. ref'd); *Delgado v. State*, 908 S.W.2d 317 (Tex.App.—El Paso 1995, pet. ref'd).

6. *Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim.App. [Panel Op.] 1982).

7. *Davis v. State*, 817 S.W.2d 345, 346 (Tex.Crim. App.1991); *see* TEX.R.APP. P. 74(d), 90(a).

8. *DeLeon v. State*, 505 S.W.2d 288, 289 (Tex. Crim.App.1974).

the matter in question is what its proponent claims." [9]  In a recent case decided after the adoption of the rules of criminal evidence, although we did not mention rule 901(a), we held that complaints regarding gaps in the chain of custody go the weight of the evidence, not its admissibility.[10]  Thus, the adoption of the rules of evidence did not change how we treat chain-of-custody issues.

Appellant argues that

[t]he trial court committed reversible error by overruling [his] objection and admitting the alleged controlled substance based on Banks's testimony concerning a zip lock bag of a tan substance which the State failed to prove, through chain of custody, was the same substance allegedly obtained from [Appellant].

Appellant contends, then, that the State has to prove the initial link in the chain of custody before the judge can admit the evidence. Appellant misunderstands rule 901.  Rule 901 does not require the State to *prove* anything.  It requires only a showing that satisfies the trial court that the matter in question is what the State claims; once that showing is made, the exhibit is admissible. To this extent, rule 901(a) simply restates the older proposition that proof of chain of custody goes to its weight rather than to its admissibility.[11]

■  In this case, the State claimed the powdery substance was methamphetamine that Banks received from Appellant.  Banks and Officer Robinette both testified.  The State introduced sufficient evidence for the judge to find that the substance was cocaine that Banks had bought from Appellant. Therefore, the trial court did not abuse its

discretion by admitting State's Exhibits 5a and 5b.  Appellant's second point of error is overruled.

In his final point of error, Appellant again complains of the chain of custody, couching the complaint in terms of a challenge to the sufficiency of the evidence.  He contends that since Monica Sue Banks, the informant, was not a credible witness, she did not establish the first link in the State's chain of custody.  Although Appellant does not inform us whether he is challenging the legal sufficiency or the factual sufficiency of the evidence, he relies on *Clewis v. State* [12] to support his argument.  He argues that the former *Jackson v. Virginia* [13] standard now applies only to capital cases in.Texas.  This argument lacks merit.  We shall analyze this point under both the *Jackson* and the *Clewis* standards.

■  In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict.[14]  The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[15]  This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[16]

■  The legal sufficiency of the evidence is a question of law.  The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence.[17]  The verdict may not be overturned unless it is

9.  Tex.R.Crim. Evid. 901(a).

10.  *See Freeman v. State,* 917 S.W.2d 512, 515 (Tex.App.—Fort Worth 1996, no pet.).

11.  *DeLeon,* 505 S.W.2d at 289; *Freeman,* 917 S.W.2d at 515.

12.  922 S.W.2d 126, 129 (Tex.Crim.App.1996).

13.  443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

14.  *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex. Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

15.  *Emery v. State,* 881 S.W.2d 702, 705 (Tex. Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995).

16.  *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.

17.  *See Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984).

irrational or unsupported by proof beyond a reasonable doubt.[18]

■ This court has the authority to review fact questions in criminal cases.[19] In reviewing the factual sufficiency of the evidence to support a conviction, we are to view "all the evidence without the prism of 'in the light most favorable to the prosecution.' " [20] We may only set aside the verdict if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[21]

■ Robinette observed Banks go into the motel room. He observed her exit the motel room. He retrieved the methamphetamine from her. The transaction was recorded, and the jury heard the tape recording. Under both the *Jackson* and *Clewis* standards, the evidence is sufficient to support the jury verdict. Appellant's fourteenth point of error is overruled.

### EXTRANEOUS OFFENSE

In his third point of error, Appellant complains that the trial court erred in admitting evidence that Banks's life had been threatened.

■ Appellant is correct when he points out that an accused may not be tried for a collateral crime or for being criminal generally.[22] In the case before us, however, the evidence was clear that Appellant was not the person who had threatened Banks's life. The testimony, then, did not constitute evidence of an extraneous offense in which Appellant was involved. Appellant's third point of error is overruled.

### SUPPRESSED EVIDENCE

■ In his twelfth point of error, Appellant contends the trial court failed to allow him to present evidence regarding the informant's use and acquisition of drugs during

her work for the North Texas Drug Task Force. The record does not support Appellant's contention. The trial court did sustain an objection to the question, "And who were you getting the drugs from?," but Appellant made no offer of proof to show any relevance. The question does not inquire about Banks's use of drugs. And Appellant does not explain why identification of the source of her drugs is relevant to any contested issue. To preserve error, the substance of the excluded evidence must be shown by offer of proof unless it was apparent from the context of the questions asked.[23] Therefore, in the case before us, nothing is presented for review. Appellant's twelfth point of error is overruled.

### TRANSCRIPTION OF TAPE

In his fourth point of error, Appellant contends the trial court committed reversible error in failing to instruct the jury that the transcript of the tape recording of the drug transaction was not to be considered by the jury as evidence. Before allowing the jury to see the transcription of the tape, the trial court instructed the jury:

> And I need y'all to listen carefully to this instruction and to follow it, and the instruction is that you will only be permitted to use this transcript as you listen to the tape to aid you, if it does, in understanding the contents of the tape. This transcript was prepared by the State of Texas through the District Attorney's Office for your use at this time, and you will remember that they caused it to be prepared.
>
> If there should be in your mind any variance whatsoever between what you hear on the tape and what you see on the transcript of the conversation, you are to remember what is on the tape and not what is on the transcript. The transcripts

**18.** *Matson,* 819 S.W.2d at 846.

**19.** *Clewis,* 922 S.W.2d at 129–30.

**20.** *Id.* at 129 (citing *Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed)).

**21.** *Id.*

**22.** *Montgomery v. State,* 810 S.W.2d 372, 375 (Tex.Crim.App.1990).

**23.** Tex.R.Crim. Evid. 103(a)(2); *Chambers v. State,* 866 S.W.2d 9, 27 (Tex.Crim.App.1993), *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994); *Stewart v. State,* 686 S.W.2d 118, 122 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985).

will be retrieved from you after you have been permitted to use them during the course of listening to this tape, so do not depend on the transcript for your later deliberations as you will not be permitted to take the transcript of the conversation with you to the juryroom. It will be reclaimed from you after the tape has been played.

■■■■■ Appellant points out that items that have not been properly introduced into evidence should not be considered as evidence.[24] Counsel, however, is permitted to use jury aids which are not admitted into evidence. Their purpose is merely to assist the jury in understanding the evidence actually introduced.[25] Although the trial judge did not specifically instruct the jury that the transcriptions of the tape were not evidence, he instructed them not to use the transcriptions as evidence when he instructed them that they must rely on the tape and that they could not use the transcriptions in their deliberations. While it might have been better practice to state specifically that the transcriptions were not evidence, the instruction was substantially what Appellant had requested. Therefore, there was no harm in the judge's denial of Appellant's request.[26] Appellant's fourth point of error is overruled.

## LEADING QUESTIONS

In his tenth and eleventh points of error, Appellant complains of leading questions, contending that the trial court's failure to

declare a mistrial sua sponte constituted fundamental error.

■■■■■ It is hard to imagine a circumstance in which leading questions, in and of themselves, would require a trial court to declare a mistrial absent timely objection and request for mistrial. While Appellant complains of a stream of leading questions by the prosecutor to Officer Talley, he only objected twice during the examination, each time after several leading questions had been asked and answered. After the trial judge sustained Appellant's objections, Appellant did not move for mistrial. Error, if any, was not preserved.[27] Appellant's tenth and eleventh points of error are overruled.

## IMPROPER ARGUMENT

■■■■■ In his fifth point of error, Appellant complains that the trial court should have declared a mistrial when the prosecutor commented on his failure to testify by arguing, "You know, he wants to talk to you—." Since Appellant did not object to the argument, nothing is presented for review.[28] Appellant argues that no objection was necessary because the argument was fundamental error. Appellant emphasizes the language in the Court of Criminal Appeals's opinions that mandates a determination of whether declaring the "error" [29] harmless would encourage the State to repeat it with impunity.[30] A comment on the defendant's failure to testify no longer requires automatic reversal. The Court of Criminal Appeals has held that a proper instruction may cure the harm of such argument.[31] Additionally, the comment com-

24. *Ellard v. State,* 650 S.W.2d 840, 841 (Tex. Crim.App.1983).

25. *Garrett v. State,* 658 S.W.2d 592, 593 (Tex. Crim.App.1983).

26. *Penry v. State,* 903 S.W.2d 715, 753 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995).

27. Tex.R.App. P. 52(a); Tex.R.Crim. Evid. 103(a); *Lawson v. State,* 854 S.W.2d 234, 239 (Tex. App.—Austin 1993, pet. ref'd).

28. *Cockrell v. State,* 933 S.W.2d 73, 88–89 (Tex. Crim.App.1996); *Braxton v. State,* 528 S.W.2d 844, 846 (Tex.Crim.App.1975).

29. We would note that the State cannot commit error. Only the trial court commits error. See our discussion in *Faulkner v. State,* 940 S.W.2d 308, 314 (Tex.App.—Fort Worth, 1997, no pet. h.) (op. on reh'g) (en banc).

30. *Orona v. State,* 791 S.W.2d 125, 130 (Tex. Crim.App.1990); *Harris v. State,* 784 S.W.2d 5, 12 (Tex.Crim.App.1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990).

31. *Long v. State,* 823 S.W.2d 259, 269 (Tex.Crim. App.1991), *cert. denied,* 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); *Madden v. State,* 799 S.W.2d 683, 699 n. 28 (Tex.Crim.App.1990), *cert. denied,* 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991); *Jackson v. State,* 745 S.W.2d 4, 15 (Tex.Crim.App.), *cert. denied,* 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988).

plained of is vague; we cannot say it was necessarily a comment on Appellant's failure to testify. It was therefore not error for the trial court to fail to declare a mistrial sua sponte. Appellant's fifth point of error is overruled.

Appellant's sixth, seventh, eighth, and ninth points of error also complain of the State's jury argument. The arguments complained of follow:

1) "[P]lease don't send the message to me and to law enforcement that you're—you're going to cripple our hands and we're not going to be able to make these cases...."

2) "And the next person he sells to at Highway 82 and Interstate 35 may not be Monica Sue Banks. It may be someone else. It may be a high school kid. It may be a junior high school kid. It will be someone else...."

3) "You know, if she is not to be trusted—You know, I think the evidence came out through questioning if she is not to be trusted, all those 30 to 35 cases—She told you most of those people pled guilty. You know, if she is not to be trusted, if she is just out there framing people to save her own skin, I—submit to you we wouldn't have that."

4) "From the testimony here, the State's own witness, Monica Sue Banks, people who get hooked on drugs because of the actions of dope dealers like Mr. Garner, the Defendant, they steal and they rob and they burglarize your homes to support their habit. It's not a victimless crime."

These arguments are troubling. They are outside the record, and they do not fall within any of the theories for admissible jury argument. While they may constitute pleas for law enforcement, they are not proper pleas.[32]

There was, however, no objection to any of the arguments. If there had been an objection, a proper instruction to disregard could have cured the prejudicial effect because these are not the types of improper jury arguments that cannot be cured. Additionally, had there been objection and proper instruction, it is not clear the prosecutor would have continued with such improper argument. Objection was, therefore, required in order to preserve error.[33] Because there was no objection, nothing is preserved for review.[34] Appellant's sixth, seventh, eighth, and ninth points of error are overruled.

The judgment is affirmed.

**32.** *Alejandro v. State,* 493 S.W.2d 230, 231–32 (Tex.Crim.App.1973).

**33.** *Boyde v. State,* 513 S.W.2d 588, 591 (Tex.Crim.App.1974).

**34.** *Braxton,* 528 S.W.2d at 846.