The STATE Of Texas, State,

v.

Harvey Lee WEBB, Appellee,

Harvey Lee WEBB, Appellant,

v.

The STATE Of Texas, State.

No. 2-97-617-CR, 2–97–737–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 5, 1998.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Helena F. Faulkner, Ruben Gonzales, Bill Durkin, Assistant District Attorneys, Fort Worth, for Appellant/Appellee.

Davis McCown, Fort Worth, for Appellee/Appellant.

## OPINION ON REHEARING

HOLMAN, Justice.

The State's motion for rehearing en banc is granted. We withdraw our July 30, 1998 opinion and judgment and substitute the following.

## I. INTRODUCTION

Harvey Lee Webb was charged with delivery of less than one gram of cocaine and less than one gram of heroin, but was convicted of the lesser offenses of possession of cocaine

and heroin and sentenced to twenty years' confinement. Webb appeals the admission into evidence of the drugs and a lab report alleging that there was a break in the chain of custody. The State also appeals and challenges the trial court's ruling that state jail felonies enhanced under section 12.42(a)(2) are not subject to further enhancement under the habitual offender provision of section 12.42(d), which resulted in Webb's sentence being for a second degree felony. TEX. PENAL CODE ANN. § 12.42(a)(2) & (d) (Vernon Supp.1998). We affirm the trial court's judgment.

## II. BACKGROUND

A Fort Worth police officer was conducting an undercover investigation of drug dealing. Arthur Wright waived the officer down and asked her if she wanted to buy drugs. When the officer agreed, Wright took her to meet Webb. The officer gave Wright money to purchase the drugs. Wright approached Webb and asked if he had any "boy and girl."[1] Webb told Wright that he had some and got the drugs from someone inside the home. Wright received the drugs, gave the money to Webb, and returned to the car. After Wright gave the officer the drugs and was dropped off, the officer radioed an arrest team, giving full descriptions of Webb and Wright and their locations.

At trial, the drugs that the officer received were introduced into evidence, as well as a lab report identifying the drugs as heroin and cocaine. The officer identified a property envelope, which she testified bore her initials and service number. She also identified the contents of the property envelope—two envelopes containing the heroin and cocaine—based upon the presence of her I.D. and service number. Additionally, the officer testified that she placed the drugs in the envelopes, made no deletions or modifications to the substances, and kept them in the manner and condition in which she received them from Wright. The officer then dropped the drugs off for analysis at the property room.

A forensic chemist testified that she recognized the State's exhibit because of the matching I.D. numbers, her initials, and the date marked on it. The chemist also testified that the drugs were originally checked out by another chemist, who had moved out of state. The first chemist kept the drugs checked out for a period of three weeks and performed some testing on them. The chemist testified that nothing indicated the substances had been mishandled and that the previous chemist had left the lab on good terms, was ethical, and never mishandled evidence.

The chemist also stated that it was not unusual to check out an exhibit for several weeks and that the checked-out exhibits were kept locked up in the chemist's personal locker. The chief serologist at the crime lab then testified that she received the evidence in a sealed condition and took it from the lab to the courtroom without making any additions or deletions.

At punishment, the trial court found that Webb had two prior felony convictions. However, at sentencing, the trial court refused to conclude that Webb's punishment for an enhanced state jail felony was subject to the habitual offender provisions of section 12.42(d) and sentenced Webb to twenty years' confinement.

## III. CHAIN OF CUSTODY

Webb asserts that the three-week period during which the first chemist had the drugs for testing created a break in the chain of custody and that the drugs were therefore inadmissible. Before adoption of the rules of criminal evidence, the law was well established that proof of the chain of custody went to the weight rather than to the admissibility of the evidence. *See Garner v. State*, 939 S.W.2d 802, 804 (Tex.App.—Fort Worth 1997, pet. ref'd) (citing *DeLeon v. State*, 505 S.W.2d 288, 289 (Tex.Crim.App.1974)). Likewise, criminal evidence rule 901[2] does not require the State to prove anything. *See id.* It requires only a showing that satisfies the

---

1. "Boy and girl" is street slang for heroin and cocaine.

2. The Texas Rules of Civil and Criminal Evidence were combined into the Texas Rules of Evidence in March 1998, after the trial here.

trial court that the matter in question is what the State claims; once that showing is made, the exhibit is admissible. *See id.; see also* Tex.R.Crim. Evid. 901(a). To this extent, rule 901(a) simply restates the older proposition that proof of chain of custody goes to the weight of the evidence rather than to its admissibility. *See Garner,* 939 S.W.2d at 804.

■ In this case, the State claimed the two substances the officer received from Webb were heroin and cocaine. The officer, a chemist, and the chief serologist testified about the chain of custody and the identification of the drugs. The State introduced sufficient evidence for the judge to find that the substances were heroin and cocaine. Moreover, the 21–day period in which the drugs were held by another chemist from the lab is not a gap in the chain of custody because the evidence established that this procedure was not unusual and that the items were kept under lock and key in the chemist's personal locker and were not readily available to others. The period of time the drugs were in one chemist's possession could bear only slightly on the weight to be given the drug evidence, but not on its admissibility. Accordingly, the trial court did not abuse its discretion in admitting the evidence. We overrule Webb's point.

## IV. PUNISHMENT ENHANCEMENT

### A. JURISDICTION

In its appeal, the State challenges the trial court's ruling that state jail felonies enhanced under section 12.42(a)(2) are not subject to further enhancement under the habitual offender provision of section 12.42(d). As a preliminary matter, we must decide whether we have jurisdiction to address such a problem.

The State contends that its appeal falls under article 44.01(a)(1) and (b). Article 44.01(a)(1) allows the State to appeal from the dismissal of an indictment or a portion of an indictment. Tex.Code Crim. Proc. Ann. art. 44.01(a)(1) (Vernon Supp.1998). The trial court here did not dismiss any portion of the indictment.

■ According to article 44.01(b), "[t]he state is entitled to appeal a sentence in a case on the ground that the sentence is illegal." *Id.* art. 44.01(b). The State contends that the trial court's failure to apply the enhancing provisions resulted in an "illegal" sentence. But for a sentence to be illegal, it must be against or unauthorized by law. *See* Black's Law Dictionary 747 (6th ed.1990). Sentences unauthorized by the law are void in Texas. *See Fullbright v. State,* 818 S.W.2d 808, 809 (Tex.Crim.App.1991); *Heath v. State,* 817 S.W.2d 335, 339 (Tex.Crim.App. 1991) (op. on reh'g). The trial court here did not impose a sentence unauthorized by law, but interpreted an enhancement statute contrary to the State's interpretation. The State's point is more appropriately characterized as an appeal of a ruling on a question of law. *See* Tex.Code Crim. Proc. Ann. art. 44.01(c).

In *Sotelo v. State,* we held that a court of appeals' affirmance of a criminal defendant's conviction precludes that court from addressing the merits of the State's appeal brought under article 44.01(c). *Sotelo,* 931 S.W.2d 745, 745 (Tex.App.—Fort Worth 1996, pet. dism'd & pet. ref'd) (op. on remand). *Sotelo* based its decision on the Double Jeopardy Clause. *Id.* at 746. In other words, because we affirmed Sotelo's conviction, we did not decide the State's 44.01(c) appeal because allowing the State to relitigate Sotelo's habitual offender allegation would twice place him in jeopardy for the same offense. *Id.* (citing *Armstrong v. State,* 805 S.W.2d 791, 793–94 (Tex.Crim. App.1991)). *Armstrong* held that the State could not relitigate a habitual offender allegation because the decision in favor of the defendant regarding sentencing was equivalent to an acquittal. *Armstrong,* 805 S.W.2d at 794. *Armstrong,* in turn, relied on *Ex parte Bullard*[3] to reach this result. *Armstrong,* 805 S.W.2d at 794. *Bullard* held that if an appellate court determines that the evidence is insufficient to sustain a habitual offender charge, the State may not retry the habitual allegation. *Bullard,* 679 S.W.2d at 14. *Bullard* based its decision on *Bulling-*

---

3. 679 S.W.2d 12 (Tex.Crim.App.1984) (orig.pro- ceeding).

*ton v. Missouri,*[4] which held that the State on retrial could not seek the death penalty when it was not imposed at the first trial based on Double Jeopardy. *Bullard,* 679 S.W.2d at 14.

■ The United States Supreme Court recently revisited the applicability of *Bullington. See Monge v. California,* — U.S. —, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998). The Court held that sentencing decisions favorable to a defendant in a noncapital case cannot be equated to an acquittal. *Id.* at —, 118 S.Ct. at 2251. The Court also held that enhancement allegations do not place a defendant in jeopardy of being tried twice for an "offense" or constitute an additional punishment for the previous offense. *Id.* at —, —, 118 S.Ct. at 2250, 2251. In other words, double jeopardy protections are inapplicable to sentencing proceedings in a noncapital context. *See id.* at —, —, 118 S.Ct. at 2250, 2253. Thus by limiting *Bullington* to capital cases, the Double Jeopardy Clause of the United States Constitution does not preclude retrial on a prior conviction in a noncapital case. *See id.* at —, 118 S.Ct. at 2253.

■ But does that mean that the Double Jeopardy Clause of the Texas Constitution also does not preclude retrial on a prior conviction? Except in cases where the prosecutor causes a mistrial,[5] the Texas Constitution gives no greater protection than the United States Constitution regarding double jeopardy. *See Stephens v. State,* 806 S.W.2d 812, 815 (Tex.Crim.App.1990), *cert. denied,* 502 U.S. 929, 112 S.Ct. 350, 116 L.Ed.2d 289 (1991). Thus, a sentencing retrial would also not be barred under the Texas Constitution based on *Monge.* Accordingly, we have jurisdiction to address the State's contention, and we overrule *Sotelo* to the extent it contradicts *Monge.*

## B. *WHITE*

The State argues that we should disavow our opinion in *State v. White,* which holds that state jail felonies punishable under section 12.35(a), and subject to enhancement under section 12.42(a)(2), are excluded from the class of felony offenses that fall under the habitual offender provisions of section 12.42(d). TEX. PENAL CODE ANN. §§ 12.35(a) (Vernon 1994), 12.42(a)(2), (d) (Vernon Supp. 1998); *White,* 959 S.W.2d 375, 378 (Tex. App.—Fort Worth 1998, pet. ref'd). The State contends that the case of *Smith v. State* holds that enhanced state felonies are subject to the habitual offender provision and urges us to follow that logic. *Smith,* 960 S.W.2d 372 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd).

■ *Smith* does not hold that enhanced state jail felonies are subject to the habitual offender provision of section 12.42(d):

[A]n *aggravated* state jail felony was capable of being enhanced, by two additional prior convictions in proper sequence, to habitual offender status under the enhancement statute as it existed from September 1, 1994 to January 1, 1996.

*Id.* at 375 (emphasis added). That holding does not concern the present version of the statute or the issue brought in this case, which is whether an *enhanced* state jail felony is subject to further enhancement under the habitual offender provision of the current penal code. Webb, unlike the defendant in *Smith,* was not convicted of an *aggravated* state jail felony under section 12.35(c), but of a *nonaggravated* state jail felony under section 12.35(a), which was then *enhanced* under section 12.42(a)(2) to the punishment range for second degree felonies. Unlike *Smith,* our decision in *White* concerns the exact statute and issue the State presents: whether enhanced state jail felonies are subject to further enhancement under section 12.42(d). *White,* 959 S.W.2d at 378. We continue to adhere to our holding in *White* and conclude that the trial court was correct to find that Webb's enhanced state jail felony conviction was not subject to further enhancement. We overrule the State's point.

## V. CONCLUSION

The trial court did not abuse its discretion in the admission of the drug evidence and

4. 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981).

5. *See Bauder v. State,* 921 S.W.2d 696, 698 (Tex. Crim.App.1996).

correctly determined that Webb was not sub-ject to further enhancement. We affirm the trial court's judgment.