

### IN THE
### TENTH COURT OF APPEALS

_____

### No. 10-09-00241-CR

**GREGORY CARL GREEN,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 33,223-CR

_____

### MEMORANDUM  OPINION
_____

Appellant was convicted by a jury of the offense of sexual assault. TEX. PEN. CODE ANN. § 22.011 (West Pamp. 2010). The jury found an enhancement paragraph alleging a final prior felony conviction for indecency with a child to be true. Based upon that finding, the trial court, as required by law, automatically sentenced appellant to life in prison. TEX. PEN. CODE ANN. § 12.42(c)(2) (West Supp. 2010). Appellant appealed.

In three issues, appellant complains that the evidence was factually insufficient, that the trial court erred in denying a mistrial after evidence of appellant's "priors" was inadvertently put before the jury, and the trial court erred by giving the jury a

document, not admitted into evidence, during its deliberations. We overrule these issues and affirm the conviction.

## SUFFICIENCY OF THE EVIDENCE

The victim, M.O., was riding in a car with friends when they met appellant. Appellant was known to the friends but not M.O. At some point, M.O. and appellant exchanged phone numbers. She then dropped him off at his house and she went to work.

Later that evening, M.O. met appellant at his house. Inside the house, they engaged in consensual kissing. When appellant started touching her, M.O. told him to stop. Appellant didn't stop. M.O.'s pants were removed. Although M.O. again told appellant to stop, he penetrated her female sexual organ with his penis and ejaculated inside her. M.O. did not scream. She testified that she went "numb." After appellant stopped, M.O. left immediately and drove to a friend's house. The friend drove her to the police station. A sexual assault exam was conducted at a local hospital. As the investigation was being conducted, appellant attempted to contact M.O. and sent a series of text messages that included one stating, "Im sorry Im bad." Appellant was arrested. He told the investigator that the only female he had contact with on the evening in question was his wife. A DNA sample was obtained from appellant. Later testing matched the DNA of appellant with the semen collected during the sexual assault exam of the victim.

All of the elements of the offense were proven by testimony which is not now controverted, except for the element of consent. It is on the element of consent that appellant argues the evidence was factually insufficient.

The "factual insufficiency" issue was premised on the Court of Criminal Appeals holding in *Clewis v. State,* 922 S.W.2d 126 (Tex. Crim. App. 1996). Since the briefs were filed, *Clewis* was overruled. *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under *Brooks*, the dual concepts of "factual insufficiency" and "legal insufficiency" are now a single "sufficiency" standard, as was articulated by the United States Supreme Court in *Jackson v. Virginia,* 443 U. S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Under that standard, when reviewing the sufficiency of the evidence, we look at all of the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U. S. at 319; *Brooks*, 323 S.W.3d at 899, 912.

Appellant's sufficiency argument identifies several facts and concludes that these facts make the state's evidence just too weak and inconclusive to support a conviction. These items were: 1) M.O. didn't fight or scream; 2) M.O. went to appellant's home; 3) M.O. agreed to kiss appellant; 4) M.O. wasn't hit, bit, punched, slapped or choked; 5) M.O.'s testimony concerning how her pants were removed was confused; 6) appellant was confused by M.O.'s reaction to the assault; and 7) M.O. had previously acted irresponsibly by driving her sister's car until it ran out of gas. Additionally, appellant's mother testified that she was at the house when the assault took place. She testified she was a light sleeper, her bedroom door was open, and that nothing had woken her up.

All of the factors relied upon by appellant are attempts to undermine the credibility of M.O. by showing the improbability of her testimony or by attacking her character. The trial jury saw and heard all of the evidence. It was their duty to judge the credibility of the witnesses and give their testimony the weight they thought it

deserved.

There is nothing inherently unbelievable about M.O.'s testimony. The act of driving to someone's house and voluntarily kissing them is not the equivalent of consent to either more physical contact or a sexual assault. There is nothing unbelievable about the facts she went "numb" or that appellant didn't have to beat or choke her.

As for appellant's mother's testimony, the jury was free to believe that, for whatever reason, she didn't wake up during the assault. They could also determine that, from her interest in the outcome of the case and relationship with the defendant, her testimony was less than truthful.

The elements of the offense were uncontroverted except the issue of consent. M.O. testified that she did not consent and repeatedly told the defendant to stop. The jury could evaluate her testimony on both direct and cross-examination. They also could consider other factors including the immediacy of her outcry to her friend, the prompt report to the police and her willingness to undergo a sexual assault exam. Additionally, the jury had a series of incriminating text messages that appellant sent to M.O. shortly after the assault. Finally, the jury had evidence of appellant's statement that he had no contact with any female, except his wife, on the night in question. This statement was shown to be false by the DNA evidence.

Viewing the evidence in the light most favorable to the verdict, there was sufficient evidence to support the jury's determination that appellant committed the offense. A rational trier of fact could have found every element of the offense, including the lack of consent issue, to be true. Appellant's first issue is overruled.

In appellant's next issue, he argues the trial court erred in not granting a mistrial when the jury received evidence about appellant's "priors" which was inadvertently left unredacted in an audio recording and the transcript of that recording.

As part of their case, the state played an audio recording of a custodial interview between a police officer and appellant shortly after his arrest. Appellant denied having contact with any female, other than his wife, on the evening in question. The state also produced a transcript for the jury to read as they listened to the recording. The state redacted four passages from the recording and transcript where the defendant talked about his previous prison experiences and the fact that he was a registered sex offender.

The redacted transcript and audio included appellant's age, weight, and then a discussion of the tattoos on his shoulder. It continued with the following statement by appellant:

> Sun and moon. That's just stuff that's basically like nights out, night stuff and day stuff. But with my priors it won't really matter. I mean she said I did it, so all's they have to is (unintelligible).

The conversation then turned to whether or not appellant's wife filed the charge.

The audio recording was admitted into evidence without objection. The court allowed the defense attorney to read the transcript. After she had read it, the transcript was distributed to the jury and the recording was played.

As the tape was being played, appellant's attorney indicated, "I think we got a problem." The jury was removed. Appellant then objected to the sentence about "priors." Although the record is unclear, both the appellant's attorney and the judge assumed the jury had read the sentence at the time the tape was stopped. Appellant's

attorney asked for a mistrial. Although no one else had raised the idea of a lesser remedy, appellant's counsel specifically stated that the error could not be cured with an instruction and the jurors couldn't be questioned without drawing more attention to the issue.

The prosecutor pointed out that no objection had been made when the tape was admitted into evidence. However, they offered to redact the sentence. They also stated that any problem could be cured by a limiting instruction. Finally, they noted that the word "priors," in an answer about tattoos, wasn't necessarily prejudicial to the appellant.

Appellant again stated that nothing could be done to cure the error. The trial court then overruled appellant's request for the mistrial and the trial resumed.

A timely objection is necessary to preserve an issue for review. TEX. R. APP. P. 33.1(a); *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). By not objecting, appellant has waived any error.

Appellant acknowledges that there was not a timely objection but argues that under the facts of this case "perhaps" it was timely. Appellant then argues the trial judge should have either questioned the jurors or given a limiting instruction – both remedies which appellant expressly asked the trial court not to do during the trial.

The only adverse ruling appellant obtained was the denial of a mistrial. Even if we were to consider the objection timely, appellant was still not entitled to a mistrial.

Mistrials are drastic remedies which should only be employed when lesser remedies, such as an instruction to disregard or questioning of jurors, would be ineffective to cure any problem. *Ocon v. State,* 284 S.W.3d 880, 884-85 (Tex. Crim. App.

2009).   When a defendant only requests a mistrial instead of lesser remedies, the reviewing court should not reverse the trial court if the problem could have been cured by less drastic remedies.  *Id.* at 885.  The denial of a mistrial is reviewed on an abuse of discretion standard.  *Id.* at 884.

It is important to note that the complaint is directed at the single word "priors." Even assuming the jury related "priors"[1] to criminal matters, no details are provided. The "priors" could be arrests or convictions, felonies or misdemeanors, crimes of moral turpitude or not.  The less specific extraneous information is, the easier it is to cure with an instruction.

Under these circumstances, a prompt instruction to the jury to disregard would have been an effective way to eliminate any prejudice.  *Gamboa v. State,* 296 S.W.3d 574, 581 (Tex. Crim. App. 2009) (instruction to disregard sufficient to cure testimony that the defendant had been seen "in a Crime Stoppers on an unrelated shooting that occurred like the following weekend").  Appellant's attorney did not want such an instruction because it would just highlight the issue for the jury.  The trial court evidently agreed. The trial court did not abuse its discretion in denying the mistrial.

### JURY RECEIVED DOCUMENT NOT IN EVIDENCE

In his final point of error, appellant complains that the trial court improperly sent the transcript of the custodial interrogation back to the jury room for consideration during their deliberations.  During jury deliberations, the jury sent out a note asking for

---

[1] The State argues that the meaning of "priors" is unclear.  "Priors" is used as a noun rather than an adjective; neither the words "convictions" nor "arrests" follows it.  However, in an era of 24-hour crime dramas on TV, coupled with the popularity of crime novels, most jurors would likely conclude "priors" used in this context has to do with prior involvement in the criminal justice system.  Indeed, Webster's Unabridged Dictionary lists "prior conviction" as one of the meanings of "prior" when used as a noun.

the transcript. Although the recording was admitted into evidence, the transcript was not. Over appellant's objection, the trial court sent the transcript back to the jury room to be used during their deliberations.

The Court of Criminal Appeals dealt with a similar complaint in *Russell v. State*, 155 S.W.3d 176 (Tex. Crim. App. 2005). In *Russell*, the jury sent out a request to hear a tape and read the transcript while listening. Over Russell's objections, the trial court brought the jury back into the courtroom, distributed the transcripts, and played the tape. The jury then returned to their room to continue their deliberations.

The *Russell* court declined to rule on whether or not the procedure was error. The court simply noted that this was not a constitutional error, it didn't affect appellant's substantial rights and, therefore, under Rule of Appellant Procedure 44.2(b), the court should disregard it. *Id*. at 179. In short, "[The jury] reviewed exactly what they reviewed during trial – no more and no less." *Id*.

Just as in *Russell*,[2] the jury in this case was given the same transcript they had

---

[2] Transcripts as jury aids when listening to an audio recording were first expressly authorized by case law by the Fort Worth Court of Appeals in 1982. *Garrett v. State*, 639 S.W.2d 18 (Tex. App.—Fort Worth 1982) aff'd, 658 S.W.2d 592 (Tex. Crim. App. 1983). The *Garrett* court, following the logic of federal cases, upheld the use of transcripts where they would aid the jury with the following procedural safeguards: 1) the side that did not prepare the transcript was given an advance copy of the transcript and adequate time to review and contest it, 2) it was not admitted into evidence and 3) the court gave a limiting instruction. *Id*. at 20. The Court of Criminal Appeals subsequently granted a petition for discretionary review and upheld the court of appeals decision on narrow grounds. *Garrett v. State*, 658 S.W.2d 592 (Tex. Crim. App. 1983). Although the Court of Criminal Appeals has not authorized the procedure outlined by the court of appeals, the court of appeals opinion has in fact been the procedure in widespread use around the state for the past 25 years. *E.g., Mayhue v. State*, 969 S.W.2d 503, 506-507 (Tex. App.—Austin 1998, no pet.); *Garner v. State*, 939 S.W.2d 802, 806-07 (Tex. App.—Fort Worth 1997, pet. ref'd); *see Russell v. State*, 155 S.W.3d 176 (Tex. Crim. App. 2005). Exact wording of the limiting instruction is up to the discretion of the trial court. It should inform the jury that the transcript is not evidence and that if they hear something on the tape that differs from the transcript, they should rely on what they heard. *Garner*, 939 S.W.2d at 806. In our case, none of these procedural safeguards were followed. Appellant's attorney was handed the transcript during the trial at the time the state offered to play it in front of the jury. There was no limiting instruction of any kind given by the trial court. While the transcript was not technically admitted into evidence, it was sent back to the jury room to be considered as they deliberated. Had the

already seen during the trial.  No substantial right of the appellant was affected.

Appellant's final issue is overruled.

CONCLUSION

Having overruled each issue on appeal, the trial court's judgment is affirmed.


KEN ANDERSON
District Judge

Before Chief Justice Gray,
      Justice Scoggins and
      Judge Anderson[3]
Affirmed
Opinion delivered and filed April 6, 2011
Do not publish
[CRPM]

---

procedural guidelines been followed, the basis for appellant's last two issues would have vanished.  More importantly, the trial would have been *fairer*.  The three procedural guidelines outlined above are the best practices for use of transcripts and should be followed by trial courts.

[3] Ken Anderson, Judge of the 277th District Court of Williamson County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (West 2005).