**MODIFY and AFFIRM; and Opinion Filed October 30, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-00059-CR

### JOSE SALDANA, JR., Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1358319-R**

## MEMORANDUM OPINION
Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Bridges

A jury convicted appellant Jose Saldana, Jr. of aggravated assault with a deadly weapon. The trial court sentenced him to twenty-five years' confinement. On appeal, he argues the trial court abused its discretion by admitting two surveillance videotapes without the proper predicate, and his sentence is outside the applicable punishment range. In a third issue, he contends the judgment should be modified to reflect his plea of not true to the enhancement paragraph. As modified, we affirm the trial court's judgment.

### Background

The events on the night of July 19, 2013 involved two rival car clubs known as D-Town Allstars and Boss Hoggin. Saldana, Adriana Duarte, and Carlos Marquez were members of the D-Town Allstars. Armando Rodrigues, Jr., and Carlos Delapena were members of Boss Hoggin.

Delapena, the victim, went to Hamm's Tire Shop for a flat tire repair. Rodrigues was also with Delapena. While at the store, Rodrigues saw David Duarte working. Duarte was a member of D-Town Allstars. Delapena testified he thought Duarte had a problem with Rodrigues. Rodrigues testified Delapena had prior interactions and problems with Duarte.

While Rodrigues and Delapena waited for the tire repair, they saw Duarte disappear for about five minutes. Delapena saw Duarte talking to someone on a phone. Shortly after Duarte returned, Marquez, Adriana, and Steven Saldana arrived. They pulled up behind Delapena's truck and Steven and Marquez started moving towards Delapena. Rodrigues said their behavior indicated they wanted to fight. The owner of Hamm's eventually told them to leave and refused to work on the truck.

Delapena and Rodrigues left, but returned shortly thereafter because Delapena forgot the center cap for his tire rim, and Rodrigues left his cellphone. Marquez, Adriana, and Steven saw them return and also went back. Marquez and Delapena then started fighting. At this point, none of the men had guns.

Saldana then pulled up in a Lincoln Town Car and Rodrigues said Saldana started shooting. He saw Saldana "jump out of the car and say my name and start shooting." Rodrigues saw a muzzle flash from the Lincoln Town Car then Delapena fell to the ground. Delapena also testified he saw Saldana standing outside his car with a pistol in hand. Delapena then heard the gunshot and fell. He said it "felt like somebody hit me with a hammer in my hip." Although Delapena did not originally tell police Saldana shot him or include this information in his written report, he knew Saldana shot him because he saw him.

Evidence collected at the scene revealed bullets were fired from both ends of the parking lot. Officer Bryan Swanson responded to the dispatch regarding the shooting. When he arrived, he saw Delapena on the ground with a gunshot wound to the leg. Two females at the scene

directed Officer Swanson to a house down the street, where Saldana lived. However, officers had difficulty getting anyone to talk about the incident.

Detective Greg Ceraso focused his search for Saldana after Rodrigues positively identified him as the shooter. A search of Saldana's grandmother's house and his car did not turn up any weapons or other evidence linking him to the crime. Detective Ceraso reviewed Saldana's text messages near the time of the incident and several texts were "large clues" about the offense. One near the time of the incident said, "Sorry, I'm a little busy right now." He also sent another text saying, "Tell homeboy my bad for hitting." Detective Ceraso believed this referenced the car Saldana hit when leaving Hamm's. The day after the shooting, Saldana received a text message stating, "I am mad at you 'cause I heard." He asked, "Of what?" and the person responded, "The shootout." Saldana then told the person, "Please call me."

Saldana was arrested and indicted for aggravated assault with a deadly weapon. The jury convicted him of the offense.

### Admission of Surveillance Videotapes

In his first issue, Saldana argues the trial court abused its discretion by admitting two surveillance videotapes without the State establishing the proper predicate. He specifically argues Chipper Beegle, a computer forensic examiner with the FBI, had no personal knowledge about the video surveillance equipment, provided no evidence that the surveillance equipment was working properly on the night in question, and was not present at the time of the offense. The State responds the trial court acted within its discretion, or alternatively, even if the trial court abused its discretion, Saldana failed to argue he was harmed by admission of the tapes.

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Thus, we will uphold the trial court's ruling admitting evidence if it is within the zone of reasonable

–3–

disagreement. *Id*. We likewise review a trial court's decision as to whether evidence was properly authenticated for an abuse of discretion. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). A trial court does not abuse its discretion when it reasonably believes a reasonable juror could find that the evidence has been authenticated. *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007).

Texas Rule of Evidence 901(a) states that the authentication requirement for admissibility of evidence is satisfied by proof sufficient to support a finding that the matter in question is what its proponent claims it is. The State is not required to prove anything under rule 901. *See Garner v. State*, 939 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd). It only requires a showing that satisfies the trial court that the matter in question is what the State claims; once that showing is made, the exhibit is admissible. *Id.*

The State called Chipper Beegle as a witness to authenticate the surveillance videotapes. He testified he is a computer forensic examiner with the FBI, and the Dallas Police Department sometimes used him to help with video evidence. Detective Ceraso asked him to download videos from Hamm's and the car audio store located next door. Beegle testified he reviewed the copies of the downloaded videos, and the videos were a fair and accurate representation of those videos downloaded from the stores. The recordings were made on a device capable of making surveillance recordings, and the videos had not been altered or changed in any way. Defense counsel took Beegle on voir dire and asked if he knew whether the machines were operating properly when the videos were taken. Beegle answered, "The video itself appeared to be recorded properly. I believe the time appeared to be off." He later elaborated that based on his watch and a clock on the wall, one video appeared to be behind by about four minutes and one video was behind approximately seven minutes. Defense counsel then objected "proper predicate is not for admission of these videos." The trial court overruled the objection.

Saldana focuses his argument on the fact that Beegle had no knowledge of the recording system and no knowledge of the offense. In *Reavis v. State*, 84 S.W.3d 716, 719 (Tex. App.—Fort Worth 2002, no pet.) the court determined a videotape was not inadmissible for lack of authentication simply because the testifying witness did not personally witness the events that occurred in the videotape. Rather, the court stated the ultimate test for authentication is always whether the proponent of the evidence has made a showing sufficient to permit a reasonable juror to find that the evidence is what the proponent claims. *Id.*; *see also Page v. State*, 125 S.W.3d 640, 649 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (concluding videotape properly authenticated despite testifying witness not being present when the crime occurred). Thus, the fact that Beegle was not present when the crime occurred does not defeat the authenticity of the videotapes.

Beegle testified the videotapes were a fair and accurate representation of the videos downloaded from the stores. The recordings were made on a device capable of making surveillance recordings, and they had not been altered or changed in any way. While defense counsel repeatedly asked him about the time stamp being off and argued "the things depicted in the video are not accurately reflected," Beegle testified the video equipment recorded properly except for the time stamp. The fact that the time stamp was off by a few minutes does not defeat the authenticity of the videotapes. *See, e.g., Garcia v. State*, No. 05-07-00540-CR, 2008 WL 2655622, at *4 (Tex. App.—Dallas July 8, 2008, pet. ref'd) (not designated for publication) (considering time stamp that was accurate "within a few minutes" in determining authenticity of videotape).

Thus, we conclude the State provided proof sufficient to support the trial court's ruling that the matter in question was what the State claimed. TEX. R. EVID. 901(a); *Garner*, 939 S.W.2d at 805. And, a reasonable juror could find the videotapes were, in fact, what the State

purported them to be. Accordingly, the trial court acted within its discretion in overruling Saldana's objection.

Even if the trial court erred in admitting the videos, Saldana has failed to argue or establish that admission of the videos harmed him. Error in the admission of evidence constitutes non-constitutional error that is subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). Under this rule, any non-constitutional error that does not affect substantial rights must be disregarded. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Kamen v. State*, 305 S.W.3d 192, 197 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). A conviction should not be overturned for such error, if the court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect. *Id.*

The State argues the overwhelming evidence of Saldana's guilt renders any error harmless. Although the overwhelming evidence of guilt is a factor to consider in the harm analysis, it is not the only factor. *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002). Other factors to consider include the nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with the other evidence in the case. *Id.*

Here, two witnesses identified Saldana has the shooter. Detective Ceraso also testified to text messages that indicated Saldana's involvement in the shooting. One specific message Saldana received the day after the shooting said, "I am mad at you 'cause I heard," referring to "the shootout." While both sides encouraged the jury during closing arguments to review the surveillance videos, the State acknowledged the quality of the tapes were "grainy" and Saldana argued "you can't identify anybody on that video." However, defense counsel thoroughly cross-

examined the witnesses about their version of events and what was depicted on the "grainy" videos. Thus, after examining the record, we conclude the admission of the surveillance videos did not influence the jury or had but a slight effect. Saldana's first issue is overruled.

## Legality of Sentence

In his second issue, Saldana argues his twenty-five year sentence is illegal because it is outside the applicable punishment range. The State responds that with the enhancement paragraph, Saldana was sentenced within the applicable punishment range.

A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal. *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003). Aggravated assault with a deadly weapon is a second degree felony. TEX. PENAL CODE ANN. § 22.02(b) (West 2011). The punishment range for a second degree felony is two to twenty years' imprisonment. *Id*. § 12.33. However, the punishment range for a second degree felony may be enhanced to a first degree felony if the State proves the defendant has a final felony conviction other than a state jail felony. *Id*. § 12.42(b). The punishment range for a first degree felony is five to ninety-nine years or life imprisonment. *Id*. § 12.32.

Saldana acknowledges an appellate court presumes the recitations in the judgment are correct unless the record contains evidence to the contrary. *See Lincoln v. State*, 307 S.W.3d 921, 922 (Tex. App.—Dallas 2010, no pet.). However, he argues we cannot rely on the presumption of regularity because the judgment contains incorrect information regarding the enhancement paragraph. The judgment states that Saldana pleaded true to the enhancement paragraph; however, the record during punishment reflects that he pleaded not true and the trial court acknowledged his plea of not true. In further support of his argument, Saldana argues there is no evidence the trial court made an oral finding of true to the enhancement paragraph.

–7–

Without record support for the enhancement paragraph, Saldana argues his sentence is outside the applicable punishment range and therefore illegal.

For Saldana's sentence to be enhanced based on his prior conviction, the State had the burden to prove his conviction was final under the law, and he was the person convicted of the offense. *Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984). The State offered evidence during punishment of a final prior felony conviction for unlawful possession of a firearm by a felon. The evidence was admitted without objection. Although the trial court did not make an oral finding of true to the enhancement paragraph, the judgment reflects a finding of true.

While the better practice is for the trial court to orally pronounce a finding to the enhancement paragraph, the court does not err if it fails to read the enhancement paragraph and find it true or false on the record. *Seeker v. State*, 186 S.W.3d 36, 39 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *Garner v. State*, 858 S.W.2d 656, 659 (Tex. App.—Fort Worth 1993, pet. ref'd) ("While the better practice for trial courts is to orally read the enhancement paragraphs and find them to be true or false on the record, we find the trial court did not err by failing to do so since the trial court assessed punishment instead of the jury."); *Williams v. State*, No. 05-14-00452-CR, 2015 WL 4656645, at *5 (Tex. App.—Dallas Aug. 6, 2015) (mem. op., not designated for publication) (concluding a trial court can implicitly find enhancement allegations to be true). Here, the State discussed the increased punishment range based on the enhancement allegation pretrial and later proved up the enhancement, without objection, during punishment. The trial court made a written finding in the judgment and sentenced Saldana within the enhanced punishment range. Thus, we agree with the State that Saldana has failed to meet his burden that the presumption of regularity does not apply to the trial court's judgment. *See, e.g.*, *Almand v. State*, 536 S.W.2d 377, 379 (Tex. Crim. App. 1976) (concluding that although the

court did not make express findings "as it should have" about a prior conviction, it was obvious from what was said during punishment that there was a prior conviction and the judgment was reformed accordingly).

In reaching this conclusion, we are unpersuaded by Saldana's reliance on *Johnson v. State*, No. 05-10-00465-CR, 2011 WL 3484801 (Tex. App.—Dallas Aug. 10, 2011, no pet.) (mem. op., not designated for publication) and *Turk v. State*, 867 S.W.2d 883 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). In *Johnson*, the defendant did not enter a plea to the enhancement paragraph, and the trial court entered "N/A" on the written judgment. *Id*. at *6. However, the "not applicable" was inconsistent with the record, which indicated the defendant had prior convictions. *Id*. The appellate court determined it could not reform the judgment but rather was required to remand for a new punishment hearing because it could not conclude "the trial court found the enhancement paragraph . . . true when the court made no oral pronouncement of its finding and entered 'N/A' on the written judgment." *Id*. Under the facts before us, the record is likewise clear Saldana had a prior conviction; however, unlike the trial court in *Johnson*, the trial court here correctly acknowledged the conviction in the written judgment.

In *Turk v. State*, the defendant received a fifty-year sentence, enhanced by two prior convictions. 867 S.W.2d at 884. The defendant entered a plea of not true to one enhancement paragraph and true to the second, but the trial court did not receive any further evidence about the prior convictions. *Id*. The judgment and sentence reflected a finding of true to both enhancement paragraphs; however, no fact finder ever found the enhancement paragraphs true but instead a second judge assumed the allegations had been properly presented. 867 S.W.2d at 887. The State asked the appellate court to reform the judgment to reflect no findings on the enhancements and keep the fifty-year sentence because even without the enhancement

paragraphs, the sentence was still within the authorized statutory range. *Id*. at 888. The appellate court denied the State's request and remanded to the trial court because on the record, it would "not assume the trial court would automatically assess another fifty-year punishment" without the enhancement paragraphs. *Id*. Again, the facts before us are distinguishable because the trial court heard evidence proving up the enhancement paragraph. Further, we are not being asked to make any assumptions about the trial court's decision, and Saldana has provided no evidence to overcome the presumption of regularity in the judgment.

Thus, despite the trial court's failure to make an oral finding of true to the enhancement paragraph, we conclude the trial court did not enter an illegal sentence outside the punishment range because the record before us supports the written finding in the judgment. *See Almand*, 536 S.W.2d at 379; *Williams*, 2015 WL 4656645, at *5. Accordingly, we overrule Saldana's second issue.

## Modification of Judgment

In his third issue, Saldana argues we should modify the judgment to reflect his plea of not true to the enhancement paragraph. The State agrees.

An appellate court can modify incorrect judgments when the evidence necessary to correct a judgment appears in the record. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Here, the indictment contained an enhancement paragraph alleging a prior felony conviction, and Saldana pleaded not true during a pretrial hearing. He pleaded not true to the enhancement during the punishment hearing, and the trial court acknowledged his plea by stating, "Let the record reflect the defendant has entered a plea of not true." The trial court's docket sheet also reflects Saldana's plea. Thus, the record contains the necessary information for this Court to modify the judgment to accurately reflect Saldana's plea of not true to the enhancement paragraph. We sustain Saldana's third issue.

–10–

## Conclusion

As modified, we affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

150059F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSE SALDANA, JR., Appellant

No. 05-15-00059-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1358319-R.
Opinion delivered by Justice Bridges.
Justices Lang-Miers and Myers
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

> Appellant's plea of true to the enhancement paragraph is modified to reflect his plea of not true.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 30th day of October, 2015.